# COURT OF APPEALS OF VIRGINIA

## Record No. 0471-25-1

JAYVYN RASHAAD LOWTHER

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Ortiz, Chaney and Frucci

Argued at Virginia Beach, Virginia

Opinion Issued July 7, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

Taite A. Westendorf (Westendorf & Khalaf, PLLC, on brief), for appellant.

Jason D. Reed, Senior Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE DANIEL E. ORTIZ

Jayvyn Lowther and an accomplice planned a robbery that left the victim, K.P., paralyzed by a gunshot wound from the neck down. For his part in the plan, a jury convicted Lowther as a principal in the second degree of aggravated malicious wounding, use of a firearm in the commission of a felony, robbery resulting in serious bodily injury, and conspiracy to commit robbery. The trial court sentenced Lowther to a cumulative 113 years in prison for the offenses, with 10 years suspended. On appeal, Lowther argues: (1) the evidence was insufficient to convict him of the offenses as a principal in the second degree, and (2) his sentence was grossly

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

disproportionate in violation of the Eighth Amendment. Finding no error below, we affirm the trial court's judgment.

BACKGROUND[2]

The night of the shooting, K.P.[3] and Lowther messaged each other through Instagram to arrange a meeting to "do some things [they] had no business doing." Both Lowther and K.P. were minors at the time; Lowther was sixteen. As K.P. recounted, Lowther first insisted that they meet closer to Lowther's residence, but K.P. did not have a way to get there. Lowther instead suggested a spot near K.P.'s home. When Lowther arrived close to midnight, he brought a third man with him ("the accomplice"), whom K.P. did not recognize.[4] All three wore ski masks, but K.P. noticed Lowther and the accomplice both wore blue latex gloves when he greeted them.[5]

The three walked to the wooded spot that Lowther suggested. K.P. walked next to Lowther, and the accomplice walked "right behind" K.P. Once the three were secluded in the wooded area, K.P. recalled, "I got shot, and . . . fell down to the ground." Then, Lowther and the

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)).

[3] We use K.P.'s initials to protect his privacy. Parts of the record in this case were sealed, but this appeal necessitates unsealing relevant portions of the record to resolve the issues raised. Therefore, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[4] Neither K.P. nor Lowther identified the accomplice at trial.

[5] K.P. identified Lowther at trial. While Lowther wore a ski mask, the two planned to meet, and K.P. knew Lowther's voice and build.

accomplice went through K.P.'s pockets, taking some marijuana, a handgun, and his phone. Once Lowther and the accomplice finished, K.P. heard Lowther ask the accomplice, "Do you want me to finish him?" The accomplice responded, "Nah, let's go. He's not going to get up," and the two fled together.

The gunshot triggered a police response through the department's gunshot detection system. Police arrived around midnight, shortly after Lowther and the accomplice fled, and found K.P. lying on the ground, limbs sprawled. Police turned K.P. over and found a single bullet wound in the back of his neck along the spine. K.P. was able to blink, shake his head, and speak softly. One officer noticed K.P. had an empty holster, and asked K.P. if someone shot him with his gun, to which K.P. nodded. When the officer asked K.P. if he knew the shooter, K.P. shook his head "no."

First responders took K.P. to the local hospital, but soon transferred him to VCU Medical Center in Richmond due to the severity of his injury. Forensic analysis showed that K.P.'s wound was caused by a .380 bullet. Lowther later told a friend "he had shot somebody with a .380."

The next day, K.P.'s brother awoke to several missed calls from his mother, who tried to alert him that K.P. was missing. K.P.'s brother went door-to-door, asking if anyone had seen K.P. K.P.'s brother eventually logged into K.P.'s Instagram account and found the messages with Lowther.[6] K.P.'s brother attempted to call Lowther, but Lowther responded by blocking K.P.'s account. Soon thereafter, a friend alerted K.P.'s brother to the crime scene where Lowther suggested the two meet the night before. K.P.'s brother went to the scene, where an

---

[6] K.P.'s brother was able to identify the account as Lowther's through the profile picture, Lowther's phone number, and Lowther's connected CashApp account.

officer directed him to the station. Police had K.P.'s brother identify K.P. as the victim, then directed him to the hospital in Richmond.

Police identified Lowther through his online accounts. K.P., too, identified Lowther from a photo and in person. Cell phone data placed Lowther at the scene of the gunshot detection the night of the shooting.

The grand jury indicted Lowther with aggravated malicious wounding (Code § 18.2-51.2(A)), use of a firearm in the commission of a felony (Code § 18.2-53.1), robbery causing serious bodily injury (Code § 18.2-58), and conspiracy to commit robbery (Code §§ 18.2-22, 18.2-58). Lowther pleaded not guilty and demanded a jury trial on all the charges.

The Commonwealth presented the aforementioned evidence at trial. Lowther did not present evidence but moved to strike at the close of the Commonwealth's case. Lowther argued the Commonwealth's evidence was insufficient to show concert of action between Lowther and the accomplice. The Commonwealth responded that the evidence showed Lowther and the accomplice planned the meeting and that Lowther helped the accomplice rob K.P. before offering to "finish him." The trial court denied Lowther's motion.

The trial court instructed the jury on liability both as a principal in the second degree and through concert of action. The jury found Lowther guilty of each charge.

At sentencing, the Commonwealth presented a pre-sentence report and put on the testimony of K.P.'s father and two brothers. Each asked the court to impose the maximum penalty available. One of K.P.'s brothers testified to the effect of the shooting on K.P.'s quality of life. K.P. is permanently paralyzed, unable to walk or move, and cannot work to provide for himself. K.P.'s brother testified that K.P. requires significant care to live, and added, "I shouldn't have to change my brother's diaper."

Lowther offered five letters from family members and testimony from his mother. Lowther's mother described her son as "an honorable, caring, and loving young man," and asked the court to impose the lowest possible sentence. Lowther allocuted, apologizing to K.P. and his family.

Having heard the evidence, the trial court sentenced Lowther to 50 years in prison for aggravated malicious wounding, 3 years in prison for using a firearm in the commission of a felony, 50 years in prison for robbery causing serious bodily injury, and 10 years in prison for conspiracy to commit robbery, suspending 10 years from his sentence for the conspiracy conviction. Together, the trial court sentenced Lowther to 113 years in prison, with 10 years suspended. Lowther appealed.

ANALYSIS

I. The evidence was sufficient to convict Lowther of his offenses as a principal in the second degree.

Lowther first argues that the Commonwealth's evidence was insufficient to convict him as a principal in the second degree, failing to prove that he knew the accomplice would shoot K.P., assisted in the shooting, or otherwise shared in the requisite intent. We disagree.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed to be correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). The only relevant question for this Court to consider on review is, "after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). We "may not disregard or discount the inferences that could have been drawn

by the factfinder unless the inferences are 'so attenuated that they push into the realm of *non sequitur*.'" *Cuffee v. Commonwealth*, __ Va. __, __ (Apr. 16, 2026) (quoting *Commonwealth v. Wilkerson*, 304 Va. 92, 100 (2025)).

"A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime." *Thomas v. Commonwealth*, 279 Va. 131, 156 (2010). "A principal in the first degree is the actual perpetrator." *Id.* "In the case of every felony, every principal in the second degree . . . may be indicted, tried, convicted and punished in all respects as if a principal in the first degree." Code § 18.2-18.

To convict a defendant as a principal in the second degree, "the Commonwealth must prove the defendant was present at the scene and 'share[d] the criminal intent of the party who actually committed the [crime] or [was] guilty of some overt act in furtherance thereof.'" *Allard v. Commonwealth*, 24 Va. App. 57, 62 (1997) (alterations in original) (quoting *Rollston v. Commonwealth*, 11 Va. App. 535, 540 (1991)). But the Commonwealth need not prove the defendant acted with specific intent to convict as a principal in the second degree. *Rollston*, 11 Va. App. at 540. "[T]he accused must either know or have reason to know of the principal's criminal intention and must intend to encourage, incite, or aid the principal's commission of the crime." *McGhee v. Commonwealth*, 221 Va. 422, 427 (1980). In other words, the Commonwealth must prove the defendant intended his actions "to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it." *Rollston*, 11 Va. App. at 541 (quoting *Ramsey v. Commonwealth*, 2 Va. App. 265, 269 (1986)).

A defendant may be convicted as a principal in the second degree based on a theory of concert of action. *Davis v. Commonwealth*, 36 Va. App. 291, 295-96 (2001). A concerted action is one that is "planned, arranged, adjusted, agreed on and settled between parties acting together

pursuant to some design or scheme." *Rollston*, 11 Va. App. at 540. When the resulting crime is an "incidental probable consequence[]" of the concerted action, then all who participated in concert may be liable for the resulting crime. *Spradlin v. Commonwealth*, 195 Va. 523, 528 (1954). Whether a crime was the "natural and probable result of the intended wrongful act" is a question of fact. *Id.*

Even though, as Lowther and the Commonwealth agree, Lowther did not shoot K.P., the record abounds in evidence that Lowther helped the accomplice plan the robbery. Lowther planned the meeting with K.P., first insisting that K.P. meet him near his residence. When K.P. was unable to travel to Lowther, Lowther ultimately suggested the wooded area near K.P.'s home. Lowther arrived, unexpectedly, with the accomplice, and each wore a ski mask and latex gloves. Once the three arrived at Lowther's suggested meeting point, the accomplice shot K.P. in the back of the neck. At that point, rather than flee, Lowther helped the accomplice rifle through K.P.'s pockets. Finally, Lowther asked the accomplice, "Do you want me to finish him?"

Based on those facts, a rational trier of fact could have inferred that Lowther and the accomplice acted in concert, that Lowther set up the meeting, knew the accomplice intended to harm K.P., and helped the accomplice rob K.P. pursuant to a common plan. *See Barney*, 302 Va. at 97. The resulting crimes—aggravated malicious wounding, use of a firearm in the commission of a felony, robbery resulting in serious bodily injury, and conspiracy to commit robbery—were "probable consequences" of that plan. *See Spradlin*, 195 Va. at 528 (reasoning that when a resulting crime is an "incidental probable consequence[]" of concerted action, all who participated are equally liable whether the crime was initially contemplated or not).

II. Lowther's term-of-years sentence does not warrant proportionality review under the Eighth Amendment.

Lowther next argues the trial court's sentence is grossly disproportionate in violation of the Eighth Amendment to the United States Constitution.[7] But Lowther's term-of-years sentence does not reach the threshold necessary for us to conduct a proportionality review.

We review the trial court's sentencing decision for abuse of discretion. *Khine v. Commonwealth*, 82 Va. App. 530, 558 (2024). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). The trial court "'clearly' acts within the scope of its sentencing authority 'when it chooses a point within the permitted statutory range' at which to fix punishment." *Id.* (quoting *Alston v. Commonwealth*, 274 Va. 759, 771 (2007)). But, "[t]o the extent that appellant's argument . . . raises a question of constitutional interpretation[] that issue is reviewed *de novo*." *Johnson v. Commonwealth*, 63 Va. App. 175, 182 (2014).

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments.'" *Commonwealth v. Smith*, 303 Va. 34, 56 (2024). Its protection is "directed, not only against punishments which inflict torture, 'but against all punishments which by their excessive length or severity are greatly disproportioned to the offenses charged.'" *Harmelin v. Michigan*, 501 U.S.

---

[7] Lowther challenges his sentence relying on both the Eighth Amendment to the United States Constitution and Article I, Section 9 of the Virginia Constitution, but does not argue that the Virginia Constitution provides broader, nor different, relief than its federal counterpart. With that in mind, we assume without deciding that the two standards provide the same protections. *Cf. Hart v. Commonwealth*, 131 Va. 726, 743 (1921) (noting that the two provisions are "practically in the same language"); *Dunaway v. Commonwealth*, 52 Va. App. 281, 311 (2008) (evaluating appellant's claims under the federal constitution when appellant failed to show "that Virginia's Constitution affords more relief than the United States Constitution"); *Dep't of Pro. & Occupational Regul., Bd. for Asbestos & Lead v. Abateco Servs., Inc.*, 33 Va. App. 473, 483 (2000) (adopting the federal "gross disproportionality" test for claims under the excessive fines clause of Article I, Section 9 of the Virginia Constitution).

957, 991 (1991) (quoting *Weems v. United States*, 217 U.S. 349, 371 (1910)). Thus, the Eighth Amendment "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin*, 501 U.S. at 996-97 (Kennedy, J., concurring in part and concurring in the judgment)).

"But '[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* at 21 (alteration in original) (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)). Indeed, the United States Supreme Court "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Cole v. Commonwealth*, 58 Va. App. 642, 653 (2011) (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (per curiam)). Thus, "proportionality review 'is not available for any sentence less than life imprisonment without the possibility of parole.'" *Id.* at 654 (quoting *United States v. Malloy*, 568 F.3d 166, 180 (4th Cir. 2009)).

Lowther's sentence does not meet that threshold. Lowther was not sentenced to life in prison, but to a term of years for his convictions. Moreover, he will be eligible for two avenues of parole: juvenile parole under Code § 53.1-165.1(F)[8] and geriatric release under Code § 53.1-40.01, either of which will convert his sentence into a shorter term. *See Angel v. Commonwealth*, 281 Va. 248, 274, *cert. denied*, 565 U.S. 920 (2011) (holding geriatric release grants defendants a "meaningful opportunity for release based on maturity and rehabilitation" in accord with the Eighth Amendment). Given that the trial court did not sentence Lowther to life in prison without the possibility of parole, our precedent provides no avenue for proportionality

---

[8] At the time Lowther was sentenced, this provision was codified as Code § 53.1-165.1(E), but this changed as of July 1, 2026. The avenue of juvenile parole remains the same, despite the provision's redesignation as Code § 53.1-165.1(F).

analysis under the Eighth Amendment. *See Cole*, 58 Va. App. at 654. We accordingly decline to conduct a proportionality review of his sentence.

It is well established that "when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du*, 292 Va. at 564. Lowther's only conviction that carried a mandatory sentence was use of a firearm in the commission of a felony, with a three-year mandatory sentence. Code § 18.2-53.1. He received discretionary sentences for his other three convictions. The trial court sentenced him to 50 years in prison for aggravated malicious wounding and 50 years in prison for robbery causing serious bodily injury, each punishable by 20 years to life in prison as Class 2 felonies. Code § 18.2-51.2(A); Code § 18.2-58; Code § 18.2-10. It sentenced him to 10 years in prison for conspiracy to commit robbery, punishable by 1 to 10 years in prison as a Class 5 felony. Code § 18.2-22; Code § 18.2-58; Code § 18.2-10. Thus, Lowther's cumulative sentence of 113 years in prison falls within the statutory ranges for his offenses established by the legislature. *See* Code § 18.2-51.2(A); Code § 18.2-53.1; Code § 18.2-58; Code § 18.2-22; Code § 18.2-10. Lowther's sentence may be severe, but it reflects both the number and gravity of his offenses, and the permanent harm that he inflicted on K.P.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

- 10 -